IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| MARY ANN MANEY | ) | |
| | ) | |
| v. | ) | No. 3:12-0370 |
| | ) | Judge Nixon/Bryant |
| SOCIAL SECURITY ADMINISTRATION | ) | |

To:     The Honorable John T. Nixon, Senior Judge

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c), to

obtain judicial review of the final decision of the Social Security Administration ("SSA" or

"the Administration") denying plaintiff's application for supplemental security income, as

provided under the Social Security Act. The case is currently pending on plaintiff's motion

for judgment on the administrative record (Docket Entry No. 12), to which defendant has

responded (Docket Entry No. 13). Plaintiff has further filed a reply in support of her motion.

(Docket Entry No. 16) Upon consideration of these papers and the transcript of the

administrative record (Docket Entry No. 10),[1] and for the reasons given below, the

undersigned recommends that plaintiff's motion for judgment be DENIED and that the

decision of the SSA be AFFIRMED.

### I. Introduction

Plaintiff filed her benefits application in October 2008, claiming disability due

---

[1] Referenced hereinafter by page number(s) following the abbreviation "Tr."

to mental illness and hepatitis. (Tr. 112, 137) Her claim was denied at the initial and reconsideration stages of agency review, whereupon she requested and received de novo hearing of her claim by an Administrative Law Judge (ALJ). The hearing before the ALJ was held on July 27, 2010, and plaintiff was represented by counsel at the hearing. (Tr. 29-67) At the conclusion of the hearing, the ALJ took the matter under advisement until September 10, 2010, when he issued a written decision finding plaintiff not disabled. (Tr. 10-23) That decision contains the following enumerated findings:

1. The claimant has not engaged in substantial gainful activity since October 6, 2008, the application date (20 CFR 416.971 et seq.).

2. The claimant has the following severe impairments: asthma and bipolar disorder (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds the claimant has the residual functional capacity to perform a full range of work at all exertional levels as defined in 20 CFR 416.967(c) except that she needs to avoid airborne irritants. The claimant has mental impairments, but she can perform 2 to 3 step directions; can maintain concentration and persistence to perform 2 to 3 step tasks for 2-hour intervals; can relate to coworkers occasionally; should have no contact with the general public; and can adapt to infrequent changes in the work place.

5. The VE testified the claimant is unable to perform her past relevant work (20 CFR 416.965).

6. The claimant was 39 years old (a younger individual age 18-49) on the date the application was filed (20 CFR 416.963).

7. The claimant has a seventh grade (limited) education and is able to communicate in English (20 CFR 416.964).

8.     Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 416.968).

9.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10.    The claimant has not been under a disability, as defined in the Social Security Act, since October 6, 2008, the date the application was filed (20 CFR 416.920(g)).

(Tr. 12, 14, 22-23)

On February 10, 2012, the Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 1-3), thereby rendering that decision the final decision of the Administration. This civil action was thereafter timely filed, and the court has jurisdiction. 42 U.S.C. §§ 405(g), 1383(c). If the ALJ's findings are supported by substantial evidence, based on the record as a whole, then those findings are conclusive. Id.

## II. Review of the Record

The following broad summary of the record is taken in large measure from defendant's brief, Docket Entry No. 13 at 2-5:

Plaintiff was 41 years old at the time of the ALJ's decision. She testified that she left school after the 7th grade. (Tr. 34) She worked in fast food restaurants on and off until 2009. (Tr. 127, 131, 138) She testified that she last worked for a company sorting clothes in 2009 and left because she could not get along with people. (Tr. 53-54) She also testified that she last worked at McDonald's in 2009. (Tr. 54-55)

Plaintiff has been incarcerated a number of times. (Tr. 39) She was released

3

from her most recent term of incarceration in 2008. She has used cocaine and marijuana over the years, but testified that she stopped using cocaine in 2006 and marijuana in 2010. (Tr. 38)

Plaintiff was seen at Centerstone Community Mental Health Care Centers ("Centerstone") for a mental health assessment in July 2004. She had just been released from prison and was required to participate in substance abuse classes. (Tr. 461) She said she had anxiety, was fearful and paranoid, and had mood swings. A Tennessee Clinically Related Group (CRG) mental health assessment of plaintiff in July 2004 stated that she had extreme limitations in activities of daily living and interpersonal functioning. (Tr. 474-76) She had a mild limitation on concentration and task performance and a mild limitation on adaptation to change. Id.

In January 2005, another CRG assessment reflected moderate limitations on plaintiff's activities of daily living, concentration and task performance, and adaptation to change. She was assessed with a marked limitation on interpersonal functioning. (Tr. 477-79) In 2007, plaintiff complained of extremely bad mood swings, depressed mood, and crying spells. (Tr. 353-78)

In August 2008, plaintiff hurt her foot but it was not a fracture. (Tr. 204, 217) She was noted to be obese and was advised to get more exercise and eat less. (Tr. 207) She had her last asthma attack more than 18 months earlier. (Tr. 333)

In October 2008, a CRG assessment stated that she had moderate limitations in activities of daily living and interpersonal functioning. She had extreme limitations on concentration, task performance, and adaptation to change. (Tr. 480-81) She had been released from prison in September 2008 (Tr. 528), and was diagnosed in October with bipolar

4

disorder, severe with psychotic features, and with chronic posttraumatic stress disorder
(PTSD). (Tr. 532) She was assigned a GAF score of 28 and was prescribed Geodon,
Imipramine, and Tegretol. (Tr. 533)

In November 2008, Dr. Joslin, a psychologist, completed an assessment in
which she noted that plaintiff had only recently reinstated mental health treatment after
her recent release from prison, and opined that she had mild to moderate limitations (Tr.
447, 449, 451-52), except with respect to her ability to interact appropriately with the public,
which Dr. Joslin opined was markedly limited. (Tr. 452) In December 2008, at Luton
Mental Health Services, plaintiff was described as euthymic, with appropriate behavior,
pressured speech, normal thought process, good insight, fair judgment, and good motivation
for treatment. (Tr. 704)

In January, February, March, and April 2009, plaintiff was a "no show" for
numerous appointments at Centerstone. (Tr. 672-95) In February 2010, she complained at
an emergency room visit of head, neck, and back ache. (Tr. 622) Her mental status was
normal. No emotional or cognitive needs were noted. (Tr. 623) There was some tenderness
and decreased range of motion of the cervical spine. (Tr. 624)

In April 2010, plaintiff was treated for a skin abscess and vaginal bleeding. A
psychiatric evaluation was described as normal and she had a normal personal interaction
with appropriate affect and demeanor. (Tr. 635-44) In May 2010, a CRG assessment
reflected marked limitations on her activities of daily living and adaptation to change. (Tr.
650-51) According to notes from the Mental Health Cooperative, she used marijuana. She
reported that her last use of crack or IV cocaine was four years prior. (Tr. 656) She had
moderate limitations in interpersonal functioning, concentration, and task performance. (Tr.

657) She had marked limitations on activities of daily living and adaptation to change. In June 2010, plaintiff reported increased psychiatric symptoms (Tr. 661); however, it was noted that she had been off her medications for a year. (Tr. 660)

At the ALJ hearing, plaintiff testified she stopped working because she could not get along with other employees. (Tr. 36-37, 53) She described a history of incarcerations. (Tr. 39) She testified she could not work due to mood swings, anger, and paranoia. (Tr. 40) She has been treated for mental health matters since she was a preteen. (Tr. 52) She does a few household chores but does not go shopping. (Tr. 46) She reads books and watches television. (Tr. 47)

The vocational expert (VE) described plaintiff's past work as unskilled and light in exertion. (Tr. 60) The ALJ asked the VE to assume that plaintiff could work at all exertional levels or only do light work, with some mental limitations on contact with other people. The VE said she could work at some unskilled light and sedentary jobs. (Tr. 61) In response to questions from plaintiff's counsel, the VE testified there would be no jobs suitable for plaintiff if she missed work and fought with employers and employees. (Tr. 65)

### III. Conclusions of Law

#### A. Standard of Review

This court reviews the final decision of the SSA to determine whether that agency's findings of fact are supported by substantial evidence in the record and whether the correct legal standards were applied. Elam ex rel. Golay v. Comm'r of Soc. Sec., 348 F.3d 124, 125 (6th Cir. 2003). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept

as adequate to support a conclusion.'" Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th

Cir. 2007)(quoting Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir.

1994)).  Even if the evidence could also support a different conclusion, the SSA's decision

must stand if substantial evidence supports the conclusion reached.  Her v. Comm'r of Soc.

Sec., 203 F.3d 388, 389 (6th Cir. 1999).

B. Proceedings at the Administrative Level

The claimant has the ultimate burden to establish an entitlement to benefits

by proving his or her "inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than

12 months." 42 U.S.C. § 423(d)(1)(A).  The claimant's "physical or mental impairment" must

"result[] from anatomical, physiological, or psychological abnormalities which are

demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at §

423(d)(3).  In proceedings before the SSA, the claimant's case is considered under a five-step

sequential evaluation process, described by the Sixth Circuit Court of Appeals as follows:

> 1) A claimant who is engaging in substantial gainful activity will not be found
> to be disabled regardless of medical findings.
>
> 2) A claimant who does not have a severe impairment will not be found to be
> disabled.
>
> 3) A finding of disability will be made without consideration of vocational
> factors, if a claimant is not working and is suffering from a severe impairment
> which meets the duration requirement and which meets or equals a listed
> impairment in Appendix 1 to Subpart P of the Regulations.  Claimants with
> lesser impairments proceed to step four.
>
> 4) A claimant who can perform work that he has done in the past will not be
> found to be disabled.
>
> 5) If a claimant cannot perform his past work, other factors including age,

> education, past work experience and residual functional capacity must be
> considered to determine if other work can be performed.

Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 539 (6th Cir. 2007)(citing, e.g., Combs v. Comm'r

of Soc. Sec., 459 F.3d 640, 642-43 (6th Cir. 2006)(en banc)); 20 C.F.R. §§ 404.1520(b)-(f),

416.920 (b)-(f).

   The SSA's burden at the fifth step of the evaluation process can be carried by

relying on the medical-vocational guidelines, otherwise known as "the grids," but only if the

claimant is not significantly limited by a nonexertional impairment, and then only when the

claimant's characteristics identically match the characteristics of the applicable grid rule.

See Wright v. Massanari, 321 F.3d 611, 615-16 (6th Cir. 2003). Otherwise, the grids cannot

be used to direct a conclusion, but only as a guide to the disability determination. Id.; see

also Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990). In such cases where the grids do

not direct a conclusion as to the claimant's disability, the SSA must rebut the claimant's

*prima facie* case by coming forward with proof of the claimant's individual vocational

qualifications to perform specific jobs, which is typically obtained through vocational expert

("VE") testimony. See Wright, 321 F.3d at 616 (quoting Soc. Sec. Rul. 83-12, 1983 WL

31253, *4 (S.S.A.)); see also Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th

Cir. 1987).

   In determining residual functional capacity ("RFC") for purposes of the

analysis required at steps four and five above, the SSA is required to consider the combined

effect of all the claimant's impairments, mental and physical, exertional and nonexertional,

severe and nonsevere. See 42 U.S.C. §§ 423(d)(2)(B), (5)(B); Foster v. Bowen, 853 F.2d 483,

490 (6th Cir. 1988).

## C. Plaintiff's Statement of Errors

Plaintiff raises four arguments for reversal of the agency's decision on her SSI application.  First, she argues that the ALJ failed to consider whether her documented hepatitis B, hypertension, posttraumatic stress disorder (PTSD), headaches, and cervical spine impairment qualify as medically severe impairments at the second step of the sequential evaluation process.  However, in considering the severity of plaintiff's diagnosed hepatitis C, the ALJ recited that plaintiff had returned normal liver function tests (Tr. 12, 333, 562), which would support a finding of nonseverity for either variety of hepatitis.  She was further reported to have hepatitis B immunity.  (Tr. 201, 354, 371)  Regarding hypertension, plaintiff has failed to point to any evidence that this condition is uncontrolled or otherwise severe enough to more than minimally affect her work-related functional abilities.  With respect to PTSD, this impairment was recognized and accounted for in the assessment of nonexamining psychological consultant Rebecca P. Joslin, Ed.D (Tr. 437-54), which assessment the ALJ adopted (Tr. 22) and incorporated into his finding of plaintiff's mental RFC, to wit: plaintiff "can relate to coworkers occasionally [and] should have no contact with the general public[.]" (Tr. 14)  Moreover, the ALJ explicitly found her PTSD symptoms to be of less-than-disabling severity on any ongoing basis.  (Tr. 20)  Thus, plaintiff's PTSD was sufficiently accounted for in the ALJ's determination.  Finally, as to plaintiff's headaches and cervical spine impairment, the record reveals that while she presented to the emergency room in January 2009 with a headache which had persisted, on and off, for seven days, she reported no significant history of headaches and, after receiving treatment, left the emergency room against medical advice.  (Tr. 590-97)  Similarly, plaintiff presented to the emergency room in February 2010 with mild-to-moderate bony tenderness and muscle spasm of her neck, but

film study revealed only loss of cervical lordotic curvature, with no significant structural impairment. The ALJ's failure to analyze these impairments for medical severity on the scant record of their treatment is not reversible error.

Plaintiff next argues that the ALJ failed to correctly weigh the opinions of the treating mental health providers, as expressed in their indications of moderate and marked limitations in certain functional domains on periodic Clinically Related Group (CRG) assessment forms, as well as their assignment of scores on the Global Assessment of Functioning (GAF) scale in completing those CRG assessment forms. Curiously, plaintiff proceeds to undermine her argument related to low GAF scores by noting the courts' (and SSA's) refusal to put stock in them as any reasonable replacement for the more particularized data available in actual treatment notes. See, e.g., Kennedy v. Astrue, 247 Fed. Appx. 761, 766 (6th Cir. Sept. 7, 2007). In any case, however, the undersigned finds that the CRG assessment forms cited by plaintiff are not particularly useful to the process of determining her enduring functional limitations, as those forms reflecting extreme and marked limitations are dated in 2004 and 2005, respectively, some 3-4 years prior to plaintiff's alleged onset date (Tr. 474-79), or were rendered upon plaintiff's intake to treatment, when her symptoms were at their worst due to a lack of existing, appropriate treatment (Tr. 474-76, 480-82). Moreover, it is unclear whether these CRG assessment forms were completed by an acceptable medical source.[2] The October 1, 2008 form, completed upon plaintiff's

---

[2]The regulatory hierarchy of medical opinion evidence speaks to the relative weight due to "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s) . . . ." 20 C.F.R. § 416.927(a)(2). "Acceptable medical sources" include, e.g., licensed physicians and licensed or certified psychologists. 20 C.F.R. § 416.913(a). Healthcare professionals other than these are

intake to treatment, is identified only with an anonymous "rater" and his/her TennCare

Provider ID number. (Tr. 482) If this rater is to be presumed to be the clinician who also

performed plaintiff's intake interview, she would be a licensed clinical social worker by the

name of Monica L. Gretter. (Tr. 473) The May 20, 2010 form was completed by Melissa

Webb-Oliver, an "Assessment Clinician" whose credentials are unknown. (Tr. 652) While

these clinicians are "other sources" whose assessments the ALJ was bound to consider, see

SSR 06-03p, 2006 WL 2329939, at *6, they are not due any particular deference, and the

conflict in the evidence of plaintiff's mental impairment severity called for the ALJ to credit

the evidence he found most consistent with the record as a whole, without the benefit of any

functional assessment from a treating psychiatrist or psychologist.

     The ALJ in this case gave a very thorough review of the record of plaintiff's

mental health treatment in light of circumstances including her lengthy incarceration which

immediately preceded the alleged onset of disability in October 2008; her struggle to comply

with the therapeutic and medical treatment recommended by her mental health providers;

her reports of functional abilities and limitations across several domains of psychological

functioning; and, the reports of her providers at Centerstone and MHC, as well as the reports

of two nonexamining state agency psychological consultants. (Tr. 16-22) Ultimately, the

ALJ found the assessment of consultant Joslin, with whom consultant P. Jeffery Wright,

Ph.D., concurred, to encapsulate the weight of the evidence of record with regard to

plaintiff's mental functional limitations: she "can understand and remember simple and

detailed information; can maintain attention, concentration and pace with some difficulty; is

included in the definition of "other sources" whose opinions the agency "may also use . . . to show
the severity of [the claimant's] impairment(s) . . . ." 20 C.F.R. § 416.913(d).

unable to interact with the general public; and is able to adapt to changes with some difficulty." (Tr. 22) These limitations were incorporated into the ALJ's finding of plaintiff's RFC, as follows:

> The claimant has mental impairments, but she can perform 2 to 3 step directions; can maintain concentration and persistence to perform 2 to 3 step tasks for 2-hour intervals; can relate to coworkers occasionally; should have no contact with the general public; and can adapt to infrequent changes in the work place.

(Tr. 14) The undersigned finds no error in the consideration given by the ALJ to plaintiff's mental health providers, nor the evidence of mental impairment as a whole.

Plaintiff's final two arguments -- that the ALJ failed to properly evaluate the credibility of her subjective complaints, and that he cherry-picked the evidence supporting his RFC finding while ignoring the countervailing evidence -- are constructed of no more than canned language, without any particular references to the record in this case or any identification of probative evidence which would support plaintiff's credibility, or which was erroneously ignored. Regarding the credibility finding here, this boilerplate approach is plainly misplaced, as plaintiff argues that the ALJ merely paid lip service to the criteria for evaluating subjective complaints while relying on her ability to perform minimal daily activities to support his adverse credibility finding, without ever "specifically stat[ing] whether he found the claimant's testimony credible or not credible[.]" (Docket Entry No. 12-1 at 11-12) In fact, the ALJ exhaustively treated the issue of credibility, fully explaining how the objective medical evidence corroborated the existence of her alleged impairments, but not her testimony as to the intensity, duration, and limiting effects of her subjective symptoms. (Tr. 19-20) Included in this explanation are references to plaintiff's level of daily

12

activity and her non-compliance with treatment recommendations, but several additional factors are weighed in the analysis. An ALJ's credibility determination is due considerable deference on judicial review, particularly since the ALJ, unlike the Court, has the opportunity to observe the plaintiff while testifying. E.g., Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 476 (6th Cir. 2003). The undersigned easily finds substantial evidence supporting that determination in this case.

Regarding plaintiff's final argument, that the ALJ "merely gives consideration to the evidence that supported his conclusion of not disabled and he mistakenly overlooked the evidence that fully established that the claimant was disabled on October 6, 2008" (Docket Entry No. 12-1 at 13), the ALJ clearly accounted for the evidence which opposed his finding of only moderate mental limitations, finding such evidence to be explained by plaintiff's failure to follow treatment recommendations. (Tr. 17-18, 22) The undersigned finds no error here.

## IV. Recommendation

In light of the foregoing, the Magistrate Judge recommends that plaintiff's motion for judgment on the administrative record be DENIED, and that the decision of the SSA be AFFIRMED.

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections

within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. Thomas v. Arn, 474 U.S. 140 (1985); Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004)(en banc).

ENTERED this 9th day of April, 2014.

s/ John S. Bryant
JOHN S. BRYANT
UNITED STATES MAGISTRATE JUDGE